SENTENCIA
El peticionario acudió ante nosotros de una determinación tomada por el Tribunal de Apelaciones en la cual concluyó que tanto la Administración de Reglamentos y Permisos como la Junta de Apelaciones sobre Construcciones y Lotificaciones habían errado al autorizar la operación de la funeraria Cardona y su sala de embalsamar mediante el mecanismo de variación. El tribunal apelativo intermedio revocó a las agencias administrativas al concluir que éstas no formularon determinaciones de hechos ni conclusiones de derecho que justificaran la variación de uso que concedieron, por lo que procedía dejarla sin efecto y devolver el caso al foro administrativo.
El 5 de octubre de 2005 expedimos el auto solicitado. Ambas partes han comparecido a expresar sus respectivas posiciones sobre la controversia ante nuestra atención. *415 Atendidos los planteamientos de las partes y evaluado en su totalidad el expediente que consta en autos, se confirma la determinación del Tribunal de Apelaciones por estar igualmente dividido el Tribunal.
Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente Señor Hernández Denton se inhibió. Los Jueces Asociados Señores Rebollo López y Fuster Berlingeri disintieron sin opinión escrita. El Juez Asociado Señor Rivera Pérez no intervino. La Juez Asociada Señora Rodríguez Rodríguez emitió una opinión de conformidad, a la que se unió la Jueza Asociada Señora Fiol Matta.
Opinión de conformidad emitida por la
Juez Asociada Señora Rodríguez Rodríguez, a la cual se une la Jueza Asociada Señora Fiol Matta.
Corresponde determinar si la Administración de Reglamentos y Permisos (A.R.Pe.) autorizó correctamente la operación de una sala de embalsamar, mediante el mecanismo de variación establecido por el Reglamento de Zonificación Especial de Santurce.
I
El Sr. Eduardo Cardona (Sr. Cardona) es propietario de la funeraria Cardona (funeraria), sita en la avenida Eduardo Conde Núm. 2199 de Villa Palmeras, Santurce, desde 1974. La funeraria está localizada dentro de los límites de un distrito zonificado como Zona de Uso General Dos (ZU-G2).
Anteriormente, el predio de terreno estaba clasificado como Comercial Uno (C-l), hasta su rezonificación como ZU-G2, por virtud de las enmiendas al Reglamento de Zo *416 nificación Especial de Santurce, 23 R.P.R. see. 650.1861 et seq., que entraron en vigor el 14 de enero de 1993.(1) La estructura donde ubica la funeraria es de una planta y tiene un sótano de hormigón.
La Sra. María Jiménez Alvarez (Sra. Jiménez) reside desde 1987 en una residencia que colinda con la funeraria propiedad del Sr. Cardona. Cuando la Sra. Jiménez compró la propiedad donde vive, la funeraria ya estaba en operación. Para esa fecha, el negocio de servicios fúnebres operaba una sala de embalsamar cadáveres en la primera planta de la estructura, mientras que en el sótano, donde posteriormente se reubicó esta sala, operaba un taller de ebanistería y pintura.(2) La residencia de la Sra. Jiménez ubica en una zona de clasificación residencial, pero uno de los patios laterales de la propiedad colinda con el predio de terreno donde está localizada la funeraria.
El Sr. Cardona poseía un permiso para operar la funeraria concedido previo a 1993, cuando se rezonificó el área.(3) Poseía también el endoso del Departamento de Salud y la correspondiente licencia sanitaria. El 25 de septiembre de 1996 la Sra. Jiménez presentó una querella ante A.R.Pe. contra el Sr. Cardona, alegando que los ruidos y gases que emanaban de un cuarto de la funeraria y del estacionamiento de ambulancias fúnebres le ocasionaban *417 problemas de salud.(4) En atención a lo anterior, A.R.Pe. refirió, mediante carta de 26 de marzo de 1997, a la Sra. Jiménez a la Junta de Calidad Ambiental (J.C.A.) y le informó que el Sr. Cardona tenía el permiso de uso para su funeraria.(5) Le indicó, además, que en caso de que el Sr. Cardona incumpliera con cualquier requerimiento que hiciera la J.C.A. para corregir las anomalías, le sometiera a A.R.Pe. evidencia de lo anterior para que la agencia determinara si procedía la revocación del permiso de uso que tenía la funeraria.
Del expediente no se desprende qué gestiones realizó la Sra. Jiménez conforme a la comunicación anterior. No obstante, surge del expediente ante nuestra consideración que luego de la querella presentada por la Sra. Jiménez, A.R.Pe. notificó en varias ocasiones al Sr. Cardona que estaba operando “[u]n negocio de embalsamamiento y de servicios fúnebres en una zona ZU-G2 sin el permiso correspondiente de la agencia.(6)
En 1996 había entrado en vigor un nuevo Reglamento del Departamento de Salud que requirió que el embalsamamiento de cadáveres se realizara en un área separada de las capillas de la funeraria.(7) Ante lo anterior, el Sr. Cardona reubicó la sala de embalsamar en el sótano de la funeraria y procedió a solicitar un nuevo permiso de uso para la operación de la funeraria y la sala de embalsamar.(8) Mediante un acuerdo fechado el 15 de enero de 1999, A.R.Pe. concedió el permiso solicitado.(9) *418 Esta determinación se realizó sin haberse realizado vistas públicas. Cabe señalar que en sus determinaciones de hechos, A.R.Pe. expresó que el Sr. Cardona había sometido una “copia del permiso de uso con que opera [ba]” la funeraria y que la solicitud se realizó “con el objeto de incluir a la funeraria una sala para embalsamar e incluir el uso en la segunda planta”.(10) Más aún, A.R.Pe. concluyó en síntesis, como parte de sus conclusiones de derecho, que el uso solicitado se podía considerar mediante el mecanismo de variaciones y se limitó a transcribir el Capítulo 35 del Reglamento de Zonificación Especial de Santurce, vigente al momento de la solicitud sobre variaciones.
Insatisfecha, la Sra. Jiménez solicitó una reconsideración de la determinación anterior. Luego de varios incidentes procesales, A.R.Pe. acogió la petición, pero no emitió una determinación final dentro del periodo establecido, por lo que la Sra. Jiménez recurrió ante la Junta de Apelaciones sobre Construcciones y Lotificaciones (J.A.C.L.), aduciendo que A.R.Pe. no formuló determinaciones de hechos que justificaran la concesión del permiso. Luego de una inspección ocular(11) y de celebrar una vista pública, el organismo apelativo confirmó la determinación de A.R.Pe. mediante la cual se concedió el permiso de uso que solicitó el Sr. Cardona. La J.A.C.L. determinó, como parte de sus *419 conclusiones de derecho, que la funeraria contaba con permiso de uso y que A.R.Pe. había autorizado “el permiso de uso al considerar la Sala de Embalsamar como un uso accesorio e incidental a la Funeraria”.(12)
En desacuerdo, la Sra. Jiménez presentó un recurso de revisión ante el Tribunal de Apelaciones. En síntesis, alegó que la J.A.C.L., al igual que A.R.Pe., no formuló en su resolución determinaciones de hechos que justifiquen su determinación de confirmar la autorización de A.R.Pe. a la operación de la funeraria y la sala de embalsamar mediante el mecanismo de variación. Adujo, además, que el organismo meramente se limitó a transcribir en sus conclusiones de derecho las disposiciones del Reglamento de Zonificación Especial de Santurce que regulan las variaciones. Más aún, expresó que no procedía confirmar una concesión de un permiso de uso incumpliendo con las disposiciones de la Ley de Política Pública Ambiental. De otra parte, A.R.Pe. y la J.A.C.L. alegaron que concedieron el permiso en controversia porque entendían que la operación de la sala de embalsamar se trataba de un “uso accesorio e incidental al ya existente”, permitido desde 1992.(13)
El Tribunal de Apelaciones revocó a las agencias administrativas al concluir que éstas no formularon determinaciones de hechos ni conclusiones de derecho que justificaran la variación de uso que concedieron. Concluyó que meramente se limitaron a “recitar” disposiciones del Reglamento de Zonificación Especial de Santurce sobre variaciones. Específicamente, el Tribunal concluyó:
Somos concientes de que se trata de una funeraria que tiene permiso de uso para operar desde fecha anterior en la que la Sra. Jiménez se querelló por vez primera. El permiso para operar la funeraria no está en controversia. Pero ese hecho, no justifica que se soslaye la aplicación de los criterios propios y *420 reglamentarios para determinar si la nueva ubicación de la sala de embalsamamiento como la que interesa operar legalmente el Sr. Cardona puede realizarse en el mismo lugar que la funeraria, como excepción o variación, aunque se trate de un uso accesorio, en las circunstancias actuales de la comunidad. (Enfasis en el original.) Sentencia del Tribunal de Apelaciones de 28 de febrero de 2005, pág. 19.
El Sr. Cardona solicitó oportunamente una reconsideración de la determinación del foro apelativo intermedio y dicho foro la denegó. En desacuerdo, el Sr. Cardona acudió ante nosotros, mediante una petición de certiorari, planteando que el foro apelativo intermedio cometió los errores siguientes:
Erró en Derecho el Tribunal de Apelaciones al determinar que el uso accesorio de [la] Sala de Embalsamar constituye una variación de uso.
Erró en Derecho el Tribunal de Apelaciones al no aplicar las disposiciones de la Sección 20.01 del Reglamento de Zonificación Especial de Santurce, que rige los usos accesorios.
Erró en Derecho el Tribunal de Apelaciones al no apreciar que el uso de la Sala de Embalsamar no se considera como uso principal, sino la Funeraria, de acuerdo con lo establecido por el Reglamento de Zonificación Especial de Santurce. Petición de certiorari, pág. 7.
Expedimos el recurso. Hoy el Tribunal, por estar igualmente dividido, confirma la determinación del foro apelativo intermedio.
II
La revisión judicial de decisiones administrativas tiene como fin primordial delimitar la discreción de los organismos administrativos para asegurar que éstos desempeñen sus funciones conforme a la ley. Mun. de San Juan v. J.C.A., 149 D.P.R. 263, 279 (1999). Estas determinaciones gozan de gran deferencia y respeto por parte de nuestros tribunales. Mun. San Juan v. Plaza Las Américas, 169 D.P.R. 310 (2006); Hernández, Álvarez v. Centro Unido, *421 168 D.P.R. 592 (2006). Lo anterior se fundamenta en la vasta experiencia y el conocimiento especializado que poseen los organismos administrativos sobre los asuntos que estatutariamente se les ha encomendado. No obstante, “la deferencia reconocida no equivale a la renuncia de la función revisora del tribunal en instancias apropiadas y meritorias, como resulta ser cuando el organismo administrativo ha errado en la aplicación de la ley”. Rebollo v. Yiyi Motors, 160 D.P.R. 69, 78 (2004). Véase, además, Reyes Salcedo v. Policía de P.R., 143 D.P.R. 85 (1987).
La función revisora de los tribunales con relación a las determinaciones de las agencias administrativas es de carácter limitado, por lo que al ejercer nuestra función revisora es de suma importancia considerar las determinaciones de hechos y conclusiones de derecho consignadas en una decisión administrativa. Mun. San Juan v. Plaza Las Américas, supra; Rebollo v. Yiyi Motors, supra. Más aún, el criterio rector para nuestros tribunales a la hora de revisar determinaciones administrativas es la razonabilidad de la actuación de la agencia recurrida. Mun. San Juan v. Plaza Las Américas, supra; Hernández Álvarez v. Centro Unido, supra; Otero v. Toyota, 163 D.P.R. 716 (2005). En esencia, la revisión judicial de las determinaciones de los organismos administrativos comprende básicamente tres áreas: (1) la concesión del remedio apropiado; (2) la revisión de las determinaciones de hechos conforme el criterio de la evidencia sustancial a la luz del expediente administrativo, y (3) la revisión completa y absoluta de las conclusiones de derecho. Mun. San Juan v. Plaza Las Américas, supra.
La Sec. 4.5 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. see. 2175, estipula que “las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo”. En cuanto a las con *422 clusiones de derecho, el referido estatuto dispone que podrán ser revisadas “en todos sus aspectos por el tribunal”. íd.
El requisito estatutario de consignar determinaciones de hechos y conclusiones de derecho en las decisiones de las agencias administrativas persigue los propósitos siguientes: (1) brindar a los tribunales la oportunidad de revisar adecuadamente la decisión administrativa y facilitar esta tarea; (2) fomentar que la agencia adopte una decisión cuidadosa y razonada dentro de los parámetros de su autoridad y discreción; (3) ayudar a la parte afectada a en-tender por qué el organismo administrativo decidió como lo hizo y, estando mejor informada, poder decidir si acude al foro judicial o acata la determinación; (4) promover la uniformidad intra agencial, en particular cuando el proceso decisorio institucional es adoptado por distintos miembros de un comité especial a quienes les está encomendado celebrar vistas y recibir la prueba, y (5) evitar que los tribunales se apropien de funciones que corresponden propiamente a las agencias administrativas, según el concepto especialización y destreza. Mun. San Juan v. Plaza Las Américas, supra.
Ill
A. La Junta de Planificación es la entidad administrativa responsable de regular el uso de terrenos dentro de la jurisdicción del Estado Libre Asociado de Puerto Rico, asegurando la utilización adecuada de nuestros recursos naturales. Hernández, Álvarez v. Centro Unido, supra. Entre sus funciones, esta Junta tiene la responsabilidad de adoptar y aprobar los reglamentos de zonificación con el propósito de dirigir y controlar el uso y desarrollo de nuestras tierras. íd. Según hemos señalado en el pasado, “la zonificación es el proceso mediante el cual ‘se clasifican los terrenos en zonas, o distritos y se establecen para cada uno *423 disposiciones específicas sobre el uso de los terrenos y sobre las obras y estructuras a permitirse’ Id., pág. 618. En esencia, a través de la zonificación se regulan las normas básicas acerca de dónde y de qué forma pueden suceder las actividades sociales y económicas de nuestros ciudadanos, armonizando sus necesidades e intereses con la protección y la utilización adecuada de nuestros recursos. Id. Conforme a lo anterior, la Junta de Planificación aprobó el Reglamento de Zonificación Especial de Santurce, para dirigir y ordenar el uso y desarrollo de los terrenos del área.(14) 23 R.P.R. sec. 650.1871.
De otra parte, A.R.Pe., por mandato estatutario, tiene el deber de ejecutar las funciones operacionales que desempeñaba la Junta de Planificación respecto a la aplicación de los reglamentos de planificación adoptados por ella en los casos individuales y la concesión de los permisos de construcción. Mun. San Juan v. Plaza Las Américas, supra; Asoc. Vec. Urb. Huyke v. Bco. Santander, 157 D.P.R. 521 (2002). Específicamente, esta agencia administrativa tiene la facultad de asegurar que se cumplan los reglamentos de planificación y construcción adoptados por los diferentes organismos gubernamentales pertinentes.
Por virtud de la entrada en vigor de las enmiendas al Reglamento de Zonificación Especial de Santurce, se modificó la clasificación del predio de terreno donde ubicaba desde 1974 la funeraria en controversia, de C-l a ZU-G2. De acuerdo con la Tabla de Usos Permitidos del reglamento, los servicios fúnebres, como los que aquí están en controversia, no están permitidos en un distrito con esta *424 clasificación. Véase See. 6.7 del Reglamento de Zonificación Especial de Santurce, 23 R.RR. see. 650.1885.
B. Conforme a la facultad delegada estatutariamente para implantar la política pública que le ha sido encomendada, A.R.Pe. puede conceder permisos discrecionales mediante la concesión de excepciones o variaciones a los requisitos de zonificación establecidos por los reglamentos que administra. Asoc. Vec. Urb. Huyke v. Bco. Santander, supra. Las variaciones son una válvula de escape dentro del rígido ordenamiento de zonificación vigente en Puerto Rico. Asoc. Res. Park Side, Inc. v. J.P., 139 D.P.R. 349 (1995). Esta figura atenúa el rigor reglamentario permitiendo cambios a las restricciones que sujetan el uso de la propiedad cuando se demuestra que, dado a circunstancias especiales, la aplicación de la reglamentación puede resultar irrazonable y ocasionar perjuicios al propietario. A.R.P.E. v. J.A.C.L., 124 D.P.R. 858 (1989). Lo anterior impide que una reglamentación existente se convierta en un instrumento inflexible que le impida amoldarse a situaciones extraordinarias. T-JAC, Inc. v. Caguas Centrum Limited, 148 D.P.R. 70 (1999).
El Reglamento de Zonificación Especial de Santurce, similar al Reglamento de Planificación Núm. 4 (23 R.P.R. sec. 650.1745 et seq.), proscribe la forma en que podrán concederse variaciones. Así, la See. 2.2 del Reglamento de Zonificación Especial de Santurce define y regula el mecanismo de variaciones, al establecer que una variación es una
[ajutorización para utilizar una propiedad para un uso no permitido por las restricciones impuestas a una zona o distrito y que sólo se concede para evitar peijuicios a una propiedad que, debido a circunstancias extraordinarias, la aplicación estricta de la reglamentación equivaldría a una confiscación de la propiedad. Autorización dada a la construcción de una estructura o parte de ésta que no satisface las normas de edificabilidad establecidas, pero que debido a la condición de solar, la ubicación especial o el uso particular, amerita una considera *425 ción especial. Variación es sinónimo de concesión. (Énfasis suplido.) 23 R.P.R. sec. 650.1881(B)(229).
Hemos expresado, interpretando las disposiciones que regulan la concesión de variaciones del Reglamento de Planificación Núm. 4, supra, las cuales tienen un lenguaje similar a las del Reglamento de Zonificación Especial de Santurce, que las variaciones, como mecanismo de excepción, sólo deben concederse en situaciones realmente ex-traordinarias, cuando están claramente justificadas y procedan conforme a los requisitos estipulados por las leyes y los reglamentos de planificación aplicables. Mun. de San Juan v. Bosque Real, S.E., 158 D.P.R. 743 (2003); T-JAC, Inc. v. Caguas Centrum Limited, supra; Asoc. Res. Park Side, Inc. v. J.P., supra, pág. 357; Fuertes y otros v. A.R.Pe., 134 D.P.R. 947, 958 (1993). La utilización inapropiada e indiscriminada de este mecanismo “podría destruir todo nuestro esquema de zonificación y cambiar eventualmente las características de un distrito, planificado originalmente con una infraestructura para ciertos usos”. A.R.P.E. v. J.A.C.L., supra, pág. 862. Conforme a lo anterior, hemos resuelto reiteradamente que “una decisión administrativa concediendo o denegando excepciones o variaciones acorde a los Reglamentos de Zonificación debe estar debidamente fundamentada” (énfasis suplido), demostrándose así que la agencia analizó los criterios desarrollados jurisprudencialmente y los establecidos por reglamentación que deben considerarse al autorizar o denegar el uso solicitado. Vélez v. A.R.Pe., 167 D.P.R. 684 (2006). Véase López v. Junta Planificación, 80 D.P.R. 646, 664 (1958).
C. El Reglamento de Zonificación Especial de Santurce define uso accesorio como “[c]ualquier uso estrechamente relacionado o complementario al uso principal que se da a la pertenencia o propiedad”. 23 R.P.R. see. 650.1881(B)(219). A su vez, la Sec. 20.1 de dicho reglamento prescribe la forma en que A.R.Pe. puede autorizar *426 permisos de usos accesorios. Específicamente, la referida disposición estable que
[p]odrán proveerse usos accesorios a cualquier uso principal permitido en el distrito donde ubique una pertenencia de acuerdo a lo establecido en esta Sección y sujeto a lo siguiente:
(1) Todo uso accesorio a permitirse será claramente incidental y corrientemente relacionado con el uso principal al que habrá de servir.
(2) Todo uso accesorio deberá contribuir a la comodidad, conveniencia o necesidad de los usuarios del uso principal servido.
(3) Todo uso accesorio deberá ser establecido conjuntamente o con posterioridad al establecimiento del fin principal al que habrá de servir, pero nunca antes.
(4) La descontinuación del uso principal implicará la descontinuación de los usos accesorios, excepto cuando se trate de las unidades de vivienda que se permiten en los edificios accesorios en las zonas de uso residencial o de uso general.
(5) El área de ocupación del edificio accesorio y del edificio principal no excederá la permitida para el solar. (Énfasis suplido.) 23 R.P.R. sec. 650.1899(A)(l)-(5).
Es importante señalar que “[l]os espacios para usos accesorios [relacionados a un uso comercial principal] podrán proveerse como parte de un edificio principal o en edificios accesorios y éstos podrán situarse, excepto cuando se indique lo contrario en este Reglamento, en cualquier sección del solar donde se permite localizar el edificio principal; o en patios laterales o posteriores requeridos”. 23 R.RR. see. 650.1899(C)(6).
IV
Habiendo expuesto y discutido la normativa aplicable al caso de autos, pasamos a resolver la controversia ante nuestra consideración.
Como se indicó inicialmente, el Sr. Cardona es dueño de una funeraria localizada en Santurce desde 1974. Hasta 1993, el solar donde ubica la propiedad estaba clasificado como C-l. Posteriormente, al enmendarse el Reglamento *427 de Zonificación Especial de Santurce, dicho distrito fue reclasificado como ZU-G2. De acuerdo con la nueva reglamentación, la operación de negocios de servicios fúnebres, como el del Sr. Cardona, no está permitido en este distrito. 23 R.P.R. see. 650.1885.
La funeraria operaba con un permiso de uso válido, ex-pedido por A.R.Pe. en 1992. Por virtud de la entrada en vigor de una nueva reglamentación del Departamento de Salud, el Sr. Cardona reubicó la sala de embalsamar que operaba dentro de la funeraria, en el sótano de la propiedad donde opera su negocio. Esta situación provocó que su vecina, la Sra. Jiménez presentara una querella ante A.R.Pe. alegando que los olores y ruidos que se producían en el laboratorio de embalsamar le ocasionaban problemas de salud.
En atención a lo anterior, el Sr. Cardona solicitó un permiso de uso para su funeraria y la reubicada sala de embalsamar ante A.R.Pe. La agencia determinó autorizar el uso solicitado mediante el mecanismo de variación establecido en el Capítulo 35 del Reglamento de Zonificación Especial de Santurce, vigente al momento de la solicitud. Entendió la referida entidad, además, que la sala de embalsamar podía considerarse como un uso accesorio a la funeraria que operaba con el correspondiente permiso desde 1992. En esencia, de la resolución de A.R.Pe. que autorizó el permiso solicitado se colige que la agencia concedió una variación a las disposiciones del reglamento de zonificación aplicable y, a su vez, autorizó la operación de la sala de embalsamar como un uso accesorio al de funeraria.
La determinación realizada por A.R.Pe., mediante la cual concedió la autorización al uso de funeraria y de la sala de embalsamar solicitado, no consignó determinaciones de hechos y conclusiones de derecho suficientes que justifiquen la variación concedida. En esencia, A.R.Pe. se limitó a describir escuetamente la propiedad en cuestión y *428 transcribir las disposiciones del Capítulo 35 del reglamento de zonificación aplicable, sin justificar este proceder. La J.A.C.L., al revisar la determinación realizada por A.R.Pe., ratificó la autorización concedida, emitiendo una resolución con determinaciones de hechos y conclusiones de derecho similarmente defectuosas que la de A.R.Pe.
Sin lugar a dudas, el Sr. Cardona necesitaba la autorización de A.R.Pe. para continuar operando su funeraria y la reubicada sala de embalsamar luego de modificarse la zonificación del distrito donde está localizada su propiedad. De hecho, según se desprende del expediente, en varias ocasiones A.R.Pe. notificó al Sr. Cardona que operaba su negocio en contravención de la nueva zonificación establecida por el Reglamento de Zonificación Especial de Santurce desde 1993. En la See. 3.2 del Reglamento de Zonificación Especial de Santurce se establece que a partir de la fecha de su vigencia “se requerirá la expedición por [A.R.Pe.] de un permiso de uso para ocupar o usar cualquier propiedad, estructura o terrenos”. 23 R.P.R. see. 650.1649(2). La referida reglamentación establece, además, que la agencia sólo podrá expedir permisos de uso cuando la propiedad o el uso que se le quiera dar esté en armonía y conformidad con las disposiciones del reglamento. 23 R.P.R. see. 650.1649(4).
Al igual que concluyó el Tribunal de Apelaciones, entendemos que las resoluciones emitidas tanto por A.R.Pe. como por J.A.C.L. carecen de determinaciones de hechos y conclusiones de derecho que justifiquen la concesión del permiso solicitado, considerando que el mismo procedía una vez se autorizara adecuadamente una variación a las disposiciones. Lo anterior es contrario a la normativa desarrollada por este Tribunal, que establece que la concesión o denegación de variaciones tiene que estar debidamente justificada en la resolución que emita la agencia correspondiente. Vélez v. A.R.Pe., supra; López v. Junta Planificación, supra. Específicamente, hemos señalado que *429 las determinaciones sobre variaciones de los requisitos establecidos por reglamentos de zonificación tienen que evidenciar que se analizaron y aplicaron los criterios establecidos jurisprudencialmente y por los reglamentos aplicables para concederlas. Lo anterior permitirá demostrar que existen circunstancias extraordinarias y meritorias que justifiquen la variación concedida. Fuertes v. A.R.P.E., supra.
Dado que la operación de la funeraria y, por consiguiente, la sala de embalsamar, no eran usos permitidos ministerialmente en el distrito donde ubica la propiedad, tanto A.R.Pe. como la J.A.C.L. tenían que analizar y aplicar los criterios establecidos por el Reglamento de Zonificación Especial de Santurce para la concesión de variaciones. 23 R.P.R. sec. 650.1915(a)-(H). Conforme a lo anterior, los organismos tenían que demostrar en sus resoluciones que consideraron, entre otros factores, si la concesión del permiso era compatible con los propósitos de la clasificación establecida por el reglamento y si la operación de la funeraria y su sala de embalsamar afectaban el contexto urbano donde ubica al igual que la seguridad y tranquilidad de los vecinos de la comunidad. No obstante lo anterior, los organismos meramente se limitaron a describir la situación particular de la propiedad y las acciones correctivas que realizó el Sr. Cardona para atender los reclamos de su vecina y, más aún, a transcribir las disposiciones sobre variaciones del reglamento de zonificación sin aplicarlo a la situación ante su consideración.
Indudablemente el lenguaje de las resoluciones de A.R.Pe. y de la J.A.C.L. no evidencia que estos organismos procedieron conforme a derecho. Tampoco encontramos en el expediente del caso de autos alguna evidencia que nos ponga en posición de concluir que en la autorización del permiso se cumplieron con los requisitos establecidos para la concesión de una variación. Sin lugar a dudas, las resoluciones de los organismos administrativos no son un mo *430 délo adecuado, mucho menos su lenguaje, de lo que debe ser una determinación debidamente fundamentada y conforme al ordenamiento que rige esta controversia.
La peticionaria, al igual que la Junta de Planificación en su comparecencia, nos invita a concluir que la expedición del permiso que realizó A.R.Pe. fue conforme a derecho, ya que se trataba de una autorización de un uso accesorio al de la funeraria. Fundamentan su alegación en el hecho de que la funeraria operaba desde 1992, antes de rezonificarse la propiedad, con un permiso válidamente ex-pedido por A.R.Pe. La Junta de Planificación argumenta, además, que determinar lo contrario, al igual que lo hizo el Tribunal de Apelaciones, sería poner en riesgo la utilización del uso accesorio como mecanismo flexible, ya que se le impartiría requisitos estrictos como si se tratara de una solicitud de variación de uso. Entendemos que no le asiste la razón a las referidas agencias administrativas. Más aún, sus alegaciones no deben servir como justificación para sancionar el proceder inadecuado de A.R.Pe. y de la J.A.C.L.
El lenguaje de la disposición del reglamento que per-mite la concesión de permisos de usos accesorios es claro al disponer que se considerarán como tales aquellos que sean incidentales a un uso principal permitido en el distrito por el Reglamento de Zonificación Especial de Santurce. 23 R.P.R. sec. 650.1899(A)(l)-(5). Ante la inexistencia de un uso principal permitido, o sea, el de servicios fúnebres, no se podía conceder un permiso de uso accesorio determinando que ya la funeraria tenía un permiso de uso válido desde 1992.
A la luz de la reglamentación aplicable a la controversia de autos, convenía considerar primero si procedía concederse una variación, ya que el reglamento, como se le informó en varias ocasiones al Sr. Cardona, no permite la operación de una funeraria en una propiedad clasificada ZU-G2. En otras palabras, no se podía hablar de usos ac *431 cesorios sin que antes existiera un uso principal permitido en el distrito por el reglamento de zonificación. O sea, el permiso de uso concedido por A.R.Pe. en 1992 era ya inconsecuente, puesto que en 1993 se aprobó un reglamento de zonificación que impedía la operación de este tipo de negocios en el distrito donde está ubicado. Ante lo anterior, A.R.Pe. tenía que determinar adecuadamente, analizando y aplicando los criterios correspondientes, si procedía autorizar la operación de la funeraria en el distrito donde sita, mediante el mecanismo de variación, y posteriormente si procedía la concesión de un permiso de uso accesorio para operar la sala de embalsamar en el sótano de su propiedad.(15)
Habida cuenta de que tanto A.R.Pe. como la J.A.C.L. autorizaron la operación de una funeraria y de su sala de embalsamar, mediante el mecanismo de variación, sin justificar tal proceder en sus respetivas resoluciones, es evidente que ambos organismos actuaron incorrectamente al expedir el permiso solicitado por el Sr. Cardona. Por lo anterior, procede confirmar la determinación del Tribunal de Apelaciones, y por tal motivo a A.R.Pe. para que revise su determinación y proceda a autorizar o denegar la expedición del permiso solicitado por el Sr. Cardona conforme corresponde.

 El reglamento fue revisado el 17 de mayo de 2003. Las secciones pertinentes a la controversia no sufrieron enmiendas.

 Resolución de 3 de julio de 2003 de la Junta de Apelaciones sobre Construcciones y Lotificaciones, Apéndice 4 de la Petición de certiorari, págs. 57-63.

 La funeraria había operado con permisos de uso provisionales de la Administración de Reglamentos y Permisos (A.R.Pe.) hasta 1991, cuando se le denegó la operación de uso. En desacuerdo con lo anterior, el Sr. Cardona apeló esta determinación ante la Junta de Apelaciones sobre Construcciones y Lotificaciones (J.A.C.L.), la cual luego de celebrar la vista pública correspondiente, emitió su resolución el 14 de febrero de 1992, autorizando la operación permanente de la funeraria. Posteriormente, el 28 de agosto de 1992 A.R.Pe. emitió el permiso de uso Núm. 80-18-D-282-SPP, autorizando la operación permanente de la funeraria, conforme a lo determinado por la Junta de Apelaciones sobre Construcciones y Lotificaciones. Véanse: Apéndice 4 de la Petición de certiorari, pág. 66; Resolución de la Junta de Apelaciones sobre Construcciones y Lotificaciones, Apéndice 4 de la Petición de certiorari, pág. 58. Véase, además, el Informe sobre Conferencia Preliminar entre Abogados, Apéndice 4 de la Petición de certiorari, pág. 113.

 Apéndice 4 de la Petición certiorari, pág. 64.

 íd., pág. 65.

 íd., pág. 67.

 Reglamento Sanitario Núm. 136 de 25 de diciembre de 1996, según enmendado.

 Solicitud Núm. B-98-18-F-417-SPU presentada ante A.R.Pe.

 El acuerdo de A.R.Pe. expresó:
“AUTORIZA, para operar un(a) Funeraria Y Sala de [E]mbalsamar ... a tenor con las disposiciones del Capítulo 35 del Reglamento de Zonificación Especial de Santurce [sobre variaciones], considerando que el uso solicitado (Sala para Embalsamar) puede considerarse accesorio a la Funeraria la cual cuenta con permiso de *418 uso ...” (Énfasis suplido.) Resolución de A.R.Pe., Apéndice 4 de la Petición de certiorari, pág. 98.
Además, se expresó que ‘la autorización señalada, mediante el mecanismo de VARIACION, es única y exclusivamente para el uso solicitado”. íd.

 Específicamente, A.R.Pe. consignó, como determinaciones de hechos en la resolución emitida para autorizar el uso solicitado, lo siguiente:
“El solar donde se propone el uso tiene una cabida de 532.55 metros cuadrados. La estructura a ser utilizada para el uso propuesto es de una planta y sótano en hormigón y bloques, que ocupa un área aproximada de 30' 0" x 50'0.
“Al momento de estudio la parte proponente somete la copia de la lisencia (sic) sanitaria de la funeraria y copia del permiso de uso con que opera la misma. Esta solicitud se hace con el objeto de incluir a la funeraria una sala para embalsamar e incluir el uso en la segunda planta.” Informe sobre Acuerdo Adoptado por el Director del Centro de Servicios de San Juan, Apéndice 4 de la Petición de certiorari, pág. 96.

 La inspección ocular de la estructura donde opera la funeraria y la sala de embalsamar se celebró el 8 de marzo de 2001. Véase la Minuta de la inspección ocular, Apéndice 4 de la Petición de certiorari, pág. 120.

 Resolución de J.A.C.L., Apéndice 4 de la Petición de certiorari, pág. 61.

 Moción en Cumplimiento de Resolución, presentada por la J.A.C.L., Apéndice 9 de la Petición de certiorari, pág. 155; Alegato presentado por A.R.Pe. ante el Tribunal de Apelaciones, Apéndice 11 de la Petición de certiorari, pág. 172.

 La Sec. 1.7 del reglamento establece lo siguiente:
“Las disposiciones de este Reglamento prevalecerán sobre y quedarán complementadas por las disposiciones de cualquier otro reglamento en vigor adoptado por la Junta de Planificación que sea de aplicación para la zona específica que ubique la propiedad, hasta donde éstas no fueran incompatibles con la materia específicamente cubierta por este Reglamento. Sus disposiciones se complementarán e interpretarán a la luz de los objetivos de este Reglamento, de las políticas públicas y de los planes sobre usos de terrenos adoptados por la Junta.” 23 R.P.R. see. 650.1875.

 Debe quedar claro que con nuestras expresiones no adjudicamos si la operación de la sala de embalsamar representa o no un uso accesorio al de la funeraria. Esta determinación le corresponde, en su momento y conforme a lo establecido por los reglamentos aplicables, a las agencias administrativas con facultad para resolver así.